# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENNETH E. SCHNUR, SR. and ELAINE M. SCHNUR, | |
| Plaintiffs, | No. 06 C 3040 |
| v. | Judge James B. Zagel |
| KOHL'S DEPARTMENT STORES, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This is a negligence action arising out of injuries allegedly sustained after Plaintiff Kenneth Schnur tripped on an uneven sidewalk outside of a Kohl's Department Store. Plaintiffs filed their motion for summary judgment on the issues of liability and causation. Defendant Kohl's filed a cross-motion for summary judgment as to Plaintiff's Amended Complaint in its entirety. For the foregoing reasons, the parties' motions for summary judgment are denied.

## I. PRELIMINARY ISSUES

### A. Defendant's Motion to Bar Plaintiffs' Expert Michael J. Jedrzejewski

Defendant moves to bar the expert testimony of Michael J. Jedrzejewski ("Jedrzejewski"). Jedrzejewski was retained by Plaintiffs to give opinions regarding Defendant's compliance with relevant building codes. Jedrzejewski's report first concludes that the deviation in the sidewalk was approximately one inch, based on calculations and measurements taken from a photograph. Then, under the assumption that the deviation is approximately one inch, Jedrzejewski concludes that the condition did not meet various building codes.

The admission of expert testimony is governed by Federal Rule of Evidence 702. Pursuant to Rule 702, courts serve as gatekeepers in regard to admitting expert testimony and "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (applying *Daubert* to "technical" and "other specialized" knowledge in addition to scientific knowledge under Rule 702). "In analyzing the reliability of proposed expert testimony, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000); *see Kumho*, 526 U.S. at 153. In addition, the court must decide whether expert testimony is relevant by determining "whether evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996).

Attacking the admissibility of Jedrzejewski's report, Defendant argues that Jedrzejewski lacks expert qualification, and that his report and opinions are not supported by sufficient facts, and are not products of reliable methodology.

### 1. Jedrzejewski Is Qualified as an Expert Only In Regard to Compliance with Building Codes

Defendant challenges Jedrzejewski's qualification to testify as an expert for both his conclusion as to the actual height of the sidewalk deviation and as to compliance with various building codes. Under Rule 702, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." "Thus, a court should consider a proposed expert's full range

2

of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith*, 215 F.3d at 718.

Jedrzejewski has no formal training or education in the practice of determining heights based on analysis of a photograph. Although Jedrzejewski claims to have used this process at times in his practice since 1977, he has never consulted relevant literature or researched the science, and he does not hold himself out as an expert in this process. Jedrzejewski is therefore not qualified to testify as to the actual height of the deviation based on his analysis of a photograph, and, accordingly, his conclusion that the height of the deviation was approximately one inch is not admissible.

Jedrzejewski is, however, qualified as an expert as to compliance with building codes. He holds a bachelor's degree in architecture, is a licensed architect in Illinois and Wisconsin, and has over thirty years experience as an architectural investigator. While he does not have any specific training or certification in analyzing building codes, his training and experience in architecture are sufficient to qualify him as an expert in this regard, as it is not overly complex or technical and does not require a high degree of specialization.

### 2. Jedrzejewski's Application of the Building Codes Is Supported by Sufficient Facts or Data

Defendant argues that if Jedrzejewski's conclusion as to the height of the walkway deviation is stricken, the rest of the report is inadmissible as unsupported by sufficient facts or data. However, under *Daubert*, testimony may be admissible if it "assists the trier of fact in understanding the evidence or in determining a fact in issue." *Cummins v. Lyle Industries*, 93 F.3d 362, 368 (7th Cir. 1996); *Daubert*, 509 U.S. at 591. Here, if the trier of fact concludes that

the deviation was one inch, as Plaintiff testified in his deposition, or any length over ¼ inch[1], then Jedrzejewski's report would assist in determining compliance with the various building codes, so the report is relevant.

In addition, as the court in *Smith* emphasized, "the court's gatekeeping function focuses on an examination of the expert's methodology," while "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." 215 F.3d at 718. It therefore does not matter that there is other evidence which Jedrzejewski did not review that contradicts his assumption that the deviation was one inch. Defendant is free to submit evidence contradicting the underpinnings of the report, which may affect the consideration and weight given to Jedrzejewski's conclusions. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 587 (7th Cir. 2000). However, Jedrzejewski's role is not to weigh and analyze evidence, but to testify as to compliance with building codes given a certain assumption. Because the trier of fact could conclude that the deviation was at least one inch, Jedrzejewski's opinion is sufficiently supported by facts to be relevant.

### 3. Jedrzejewski Used Appropriate Methodology in Applying the Building Codes

Defendant finally argues that Jedrzejewski's report does not reflect sufficient methodology, and takes issue with the brief and conclusory nature of his findings. The object of a court's focus on an expert's methodology is "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

---

[1] The precise measurement of the deviation is not essential to Jedrzejewski's conclusions, anyway, as he indicated in his deposition that they would be the same for any deviation greater than ¼ inch.

relevant field."² *Kumho*, 526 U.S. at 152. Here, though, the proper methodology is simply applying the relevant building codes to the condition of the walkway to reach a conclusion as to compliance. Jedrzejewski identified relevant building codes, reached conclusions as to compliance based on his review of various materials, and gave the reasons, though briefly, for his conclusions. Again, Defendant is free to contradict Jedrzejewski's conclusions or offer its own expert, but the correctness of the expert's conclusions is not at issue here, *Smith*, 215 F.3d at 718, and Jedrzejewski's methodology was sufficient.

### 4. Conclusion

Jedrzejewski is not qualified as an expert in regard to photographic analysis, so his testimony as to the height of the deviation is inadmissible. However, he is qualified to analyze compliance with building codes, and he relied on sufficient facts and methodology, so his testimony as to that issue is admissible. Therefore, I strike Jedrzejewski's conclusion in Section 3.1 that, based on measurements and analysis of a photograph, the difference in level in the walkway was approximately one inch. However, the remainder of the report, evaluating compliance with certain building codes under the assumption that the deviation is one inch, may stand.

### B. Defendant's Motion to Strike Plaintiffs' Filings as Untimely

Defendant also moves to strike each of Plaintiffs' filings in regard to the cross motions for summary judgment and their response to Defendant's motion to bar expert testimony. Plaintiffs served their motion for summary judgment on Defendant eighteen days after the

---

² *Daubert* also provides specific factors for consideration which are inapplicable here. *See Kumho*, 526 U.S. at 152 ("[W]hether *[Daubert's](Daubert's)* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.").

deadline set in the briefing schedule. Further, Plaintiffs failed to timely serve their responses to Defendant's motion for summary judgment and motion to bar expert testimony. Finally, twenty-seven days after the motion for summary judgment filing deadline, Plaintiffs requested an extension of time to file their pleadings and requested leave to file their untimely pleadings instanter.

Local Rule 78.3 provides that, in response to untimely filings, "the court on its own motion or that of a party may strike the motion or grant the same without further hearing." Though Plaintiffs have clearly failed to serve and file their pleadings in a timely manner, Defendant has not established any prejudice against it by the late filings. Furthermore, it does not appear that Plaintiffs gained a meaningful advantage through the extra time they took in preparing and filing their briefs. Therefore, while I note that the filings were untimely, I deny the motion to strike, and have considered them in deciding the motions before me.

## II. STATEMENT OF FACTS

On October 25, 2004, at about 6:45 p.m., Plaintiffs Kenneth Schnur ("Schnur") and his wife Elaine Schnur visited a Kohl's department store at 230 East Rollins Road, Round Lake Beach, Illinois, to go shopping. They entered through the west entrance of the store, and Schnur did not notice any unsafe conditions, imperfections, or areas where the pavement was raised at that time. After shopping for clothes and shoes, the Schnurs exited the Kohl's store at approximately 8:00 p.m. through the same doors they had entered. The weather was cool and dry, and there were lights illuminating the exit and the parking lot.

As Schnur exited the store and began walking down the handicap ramp within the sidewalk, which connected the sidewalk to the parking lot, he tripped on a raised portion at the

6

top of the ramp where it met the sidewalk. Schnur stumbled forward, but did not fall or make any contact with the ground.[3] Schnur's wife also stumbled at the same time, but did not fall, drop her purse, or make any contact with the ground. Schnur then looked down at the pavement on the sidewalk ramp and concluded that one concrete slab that was raised above its adjacent slab caused him to stumble.

Schnur did not report his tripping incident to Kohl's at that time. He returned the next day and spoke to a Kohl's employee about the incident and the condition of the walkway, but never filled out an accident report with Kohl's. The following day, on October 27, 2004, Schnur again returned to Kohl's and took photographs of the walkway and the area around the west entrance. On or about November 15, 2004, Kohl's retained Atlas Concrete lifting to repair the walkway.

The only material factual dispute is over the actual condition and height of the deviation in the walkway that Schnur tripped on. Schnur never measured the height differential, but he estimated that it was raised about an inch or more, and stated that it was "raised very high." When asked wether the deviation was 2 inches or more, Schnur could not be certain. Elaine Schnur testified that she visually inspected the sidewalk, but not for a long time, and that the height differential was not plainly visible to the naked eye by glancing down, but that you had to look closer to see it.

---

[3] Plaintiffs submitted testimony from Dr. Jonathan S. Citow, Schnur's treating doctor, that Schnur developed a central disc herniation at L3-4, with significant central stenosis, in addition to pain extending into the left groin and testicle, paraesthesias on the dorsum of the right foot, and bilateral hip pain, and that the tripping incident of October 25, 2004 was the cause of these conditions. However, Schnur's medical condition is not within the scope of this motion, and Defendant has reserved the right to rebut the truth of those statements.

At the time of the incident, Lori Frighetto was Kohl's Store Manager. As Store Manager, her duties included looking at the Kohl's facility and making sure there were no defects or safety hazards that would be harmful to customers. She testified that she used the west entrance to the Kohl's store just about every day during 2004, and that she recalls walking out the west doors in October of 2004. She testified that she did not notice any kind of tripping or falling hazard or defect on the sidewalk, and that no incidents or accidents were reported at the store during that time frame.

Ken Wagner began working at Kohl's as Personnel and Operations Manager on November 1, 2004, about one week after the incident. He testified that he ran his hand over the height differential and thought that it was "so small and minuscule that [he] did not even understand why it was an issue." He believed that it was "not even close to an inch," and "less than a quarter inch, tops," and that it was not a hazard or dangerous in any way.

Plaintiffs retained Michael Jedrzejewski, a licensed architect, to evaluate whether the walkway complied at the time of the incident with relevant ordinances and building codes. Jedrzejewski prepared a report in which he determined that the applicable codes require any deviation between adjacent levels of pavement, sidewalk, or handicap ramps to be no greater than one quarter inch. Assuming, based on his review of Schnur's testimony and photographs of the walkway, that the deviation was approximately one inch, Jedrzejewski concluded that the condition of the walkway violated the ordinances and building codes.

On August 16, 2004, John Komorowski ("Komorowski"), conducted an inspection of the Kohl's Department Store and the property at 230 East Rollins Road to determine and report any defects, deviations, or violations of the International Building Code, 2000 edition, the 1997

8

edition of the Illinois Accessibility code, the BOCA National Property Maintenance Code, 1996 edition, and any and all other codes applicable at the time. At the time, Komorowski was a building inspector for the Village of Round Lake Beach. Based on his inspection of the property, including the ramp in front of the west entrance, Komorowski concluded that there were no violations of any statutes, ordinances, or codes, and that there were no hazardous or dangerous conditions present. As a result of the inspection, Komorowski recommended a Permanent Certificate for the property.

### III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c)(2); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### IV. DISCUSSION

Illinois law applies to this diversity action. To state a cause of action for negligence under Illinois law, a plaintiff must show that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's

injuries. *Staples v. Krack Corp.*, 186 F.3d 977, 979 (7th Cir. 1999); *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990). "A duty is an obligation imposed by law which requires one to conform to a certain standard of conduct for the protection of another against an unreasonable risk." *Hartung v. Maple Inv. & Dev. Corp.*, 612 N.E.2d 885, 887 (Ill. App. 1993); *Ward*, 554 N.E.2d at 226. "Whether a duty exists in a particular case is a question of law to be determined by the court." *Ward*, 554 N.E.2d at 226.

As an initial matter, Plaintiffs' motion for summary judgment on the issue of causation is premature. Discovery of expert witnesses has not concluded, and Defendant reserves the right to contradict expert testimony that Schnur's stumble was the proximate cause of his injuries. Accordingly, I only address the issues of duty and breach.

### A. Defendant Owed Plaintiffs A Duty of Care.

"The existence of a duty depends on whether the parties at the time of the incident stood in such a relationship that the law would impose an obligation upon the defendant to act reasonably for the plaintiff's protection." *Staples*, 1998 WL 749037 at *2; *Ward v. K Mart Corp.*, 554 N.E.2d at 226. "In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." *Reid v. Kohl's Dept. Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008). This rule, however, is not absolute. Under the *de minimus* exception, a business will not be liable where a sidewalk deviation is only slight; a business has no duty to protect against such small defects. *Hartung*, 612 N.E.2d at 889. Accordingly, an owner or occupier of land is not an absolute insurer of the safety of an invitee, but owes a duty of reasonable care under the circumstances regarding the state of the premises "to avoid creating an *unreasonable risk* of harm to an invitee." *Id*.(emphasis original). There is no bright-line test for determining what constitutes a slight defect, so each case must be

10

determined on its own facts. *Id.* The general rule, though, is that "a sidewalk defect is actionable only when the defect is such that a reasonably prudent person should anticipate some danger to persons walking on it." *Gleason v. City of Chicago*, 547 N.E.2d 518, 519 (Ill. App. Ct. 1989).

### 1. The Alleged Defect Was Not *De Minimus.*

Plaintiffs argue that as a customer, and invitee, Kohl's owed them a duty to maintain the premises in a reasonably safe condition to avoid injuring them. *Reid*, 545 F.3d at 481. Defendant does not dispute the fact that Schnur was an invitee, but counters that any alleged imperfection in the sidewalk was *de minimus* and therefore not actionable. Given the question of fact as to the actual height of the sidewalk deviation, and the aggravating factors surrounding its location, I do not find the sidewalk flaw *de minimus*.

The *de minimus* rule was originally intended to protect municipalities from the burden of having to monitor and maintain great lengths of sidewalk in perfect condition. *Harris v. Old Kent Bank*, 735 N.E.2d 758, 763 (Ill. App. Ct. 2000); *Gillock v. City of Springfield*, 644 N.E.2d 831, 834 (Ill. App. Ct. 1994). In *Hartung*, the court extended the rule to private landowners, recognizing that private landowners can likewise have expanses of walkways for which it would be unduly burdensome to have to maintain in perfect conditions at all times. 612 N.E.2d at 889-90. However, monitoring and maintaining the sidewalks immediately outside the entrance to a store is not an equivalent burden to a municipality maintaining miles of sidewalks, or a shopping center maintaining hundreds of thousands of square feet. *Harris*, 735 N.E.2d at 765; *Bledsoe v. Dredge*, 681 N.E.2d 96, 97-98 (Ill. App. Ct. 1997).

As recognized in *Bledsoe*, an entryway to a commercial building can be expected to draw patrons. 681 N.E.2d at 97-98. One factor in determining whether a defect is actionable is the location of the defect. Courts consider whether the sidewalk is located in a commercial or

11

residential area, and the anticipated amount of traffic. The courts have also recognized that the presence of certain aggravating factors such as heavy traffic can weigh against finding a *de minimus* exception because pedestrians may become easily distracted and must be particularly alert to avoid bumping into each other. *Hartung*, 612 N.E.2d at 888. In Illinois, absent aggravating factors, defects with a height differential of less than two inches trigger the *de minimus* rule and are not actionable. *Id*.

The undisputed facts here show that after shopping for clothes and shoes, the Schnurs exited the Kohl's store at approximately 8:00 p.m. through the west entrance of the store. The weather was cool and dry, and there were lights illuminating the exit and the parking lot. As Schnur began walking down the handicap ramp within the sidewalk, he tripped on a raised portion at the top of the ramp where it met the sidewalk. His wife also stumbled.

Schnur did not measure the height of the sidewalk deviation, but he estimated that it was raised about an inch or more. When asked whether the deviation was 2 inches or more, Schnur could not be certain. Elaine Schnur testified that the deviation was not visible to the naked eye by glancing down. Lori Frighetto supports this contention stating that she personally used the west entrance on the day of the trip and did not notice any sidewalk defect. Ken Wagner testified that the height differential was "so small and minuscule that [he] did not even understand why it was an issue." He believed that it was "not even close to an inch," and "less than a quarter inch, tops."

It is clear that absent aggravating factors, the deviation would fall within the *de minimus* exception. The evidence presented indicates that the deviation was somewhere between less than 1/4 in. and 1 inch or more. No evidence supports a finding that the deviation was two inches or

greater. However, two aggravating factors are present: the deviation was near a heavily traveled entrance to the building, and at the edge of a handicapped ramp.

Plaintiffs cite several cases to show that deviations of less than two inches fall outside of the *de minimus* exception. These cases, however, are distinguishable because the courts found slight height deviations actionable only in light of the gravity of the entire defect. For example, the Illinois Appellate Court in *West v. City of Hoopeston*, 497 N.E.2d 170 (Ill. App. Ct. 1986), found that though a broken sidewalk deviation was slight, measuring 1/4 and 9/16 of an inch in height, because it was accompanied by a 2-inch wide gap between the sidewalk slabs, the plaintiff's claim was actionable. Similarly, in *Repinski v. Jubilee Oil Co.*, 405 N.E.2d 1383 (Ill. App. Ct. 1980), the court found that a ½ inch deep hole was not *de minimus* because it was also 1½ feet wide. These cases present the additional danger of a height and width deviation not present here.

More persuasive is Plaintiffs' argument that the aggravating factors here take the deviation out of any *de minimus* classification. Plaintiffs contend that the placement of the deviation by a handicapped ramp, near a heavily traveled walkway in front of Kohl's entrance renders it an actionable defect. *See generally Birck*, 608 N.E.2d 920, 923 (Ill. App. Ct. 1993). As noted in *Birck*, "[t]he surrounding circumstances, particularly whether the sidewalk is located in a commercial or residential neighborhood and the anticipated volume of traffic on the sidewalk, are to be taken into consideration." *Id*. Here, though a question of fact exists as to the height of the alleged sidewalk deviation, there is no dispute as to its location – by the entrance of the Kohl's store, at the top of a handicapped ramp. A person approaching the ramp would expect the sidewalk to begin to decline at the point of the defect. A defect which instead raises the walkway an inch at that point creates a risk of harm greater than if the defect were on level

13

ground.  Given these aggravating circumstances, I do not find that the sidewalk deviation is *de minimus*; as a matter of law, Kohl's owed a duty of care to Plaintiffs.

### B. A Question of Fact Exists As To Kohl's Breach of Duty.

Plaintiffs argue that Kohl's breached its duty to Schnur because it violated the city's building code.  Under Illinois law, in a common law negligence action, a violation of a statute or ordinance designed to protect human life or property is prima facie evidence of negligence. *Camp v. TNT Logistics Corp*. 553 F.3d 502 (7th Cir. 2009).  To recover damages in a negligence action based upon a defendant's alleged statutory violation, a plaintiff must show that (1) he belongs to the class of persons that the statute was designed to protect; (2) his injury is of the type that the statute was designed to prevent; and (3) the violation proximately caused his injury. *Id*.

Schnur argues that Kohl's violated the Illinois Accessibility Code ("the Code") as adopted by the Village of Round Lake Beach, where the accident in question occurred.  The Code provides that "[c]hanges in level up to 1/4 in. may be vertical and without edge treatment . . . changes in level between 1/4 in. and ½ in. shall be beveled with a slope no greater than 1:2. . ." Section 400.310(a).  Plaintiffs argue that Kohl's violated the statute because, despite a change in level greater than 1/4 in., it was not beveled as required by the code.

Schnur misstates the evidence.  Kohl's maintains that the elevation, if there was one, was less than 1/4 inch.  Though Schnur presented testimonial evidence that the deviation was at least one inch, Kohl's has presented evidence to show that the deviation was less than 1/4 inch. Komorowski was a building inspector for the Village of Round Lake Beach, and on August 16, 2004, inspected Kohl's for all violations of the pertinent codes, including Kohl's ingress and egress, and found no code violations or hazardous conditions on Kohl's property.  Similarly, Ken

Wagner testified that he ran his hand over the height differential and thought that it was "so small and minuscule that [he] did not even understand why it was an issue." He believed that it was "not even close to an inch," and "less than a quarter inch, tops." Additionally, even assuming *arguendo* that evidence conclusively established a violation, evidence of a violation does not constitute negligence *per se*. *Carey v. Lazzara, Inc.*, 661 N.E.2d 413, 416-17 (Ill. App. Ct. 1996). "[A] defendant may prevail despite an ordinance violation by showing that he or she acted reasonably under the circumstances." *Id*. Accordingly, there is a question of fact as to whether Kohl's breached its duty to Plaintiffs.

### C. The Question of Causation is Premature.

As noted *supra*, the question of causation is premature as expert witness discovery has not been completed.

## V. CONCLUSION

For the foregoing reasons, the parties' motions for summary judgment are denied. Though Plaintiffs established a duty of care, a question of fact remains as to breach and causation. Defendant's motion to bar Plaintiffs' expert is granted in part and denied in part. Defendant's motion to strike is denied.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: November 29, 2010